And that is United States v. Richard Miller. Good morning and may it please the court. My name is Nick Veith. I work for the Federal Defender's Office down in Pocatello, Idaho. And we represent Mr. Richard Miller. We brought this appeal and focused on one issue and one issue alone. And that issue being whether at the time of Mr. Miller's supervised release violation, whether or not his supervision had actually already expired. The issue came up a few, well it was just a few hours after his detention hearing that I realized we may have an issue here regarding jurisdiction. That issue came up because of my reading of the Sullivan case. I think it was actually earlier that morning. And the that community pre-release centers are not imprisonment under 18 U.S.C. section 3624E. Well that was a state case, wasn't it? It was both a state, Mr. Sullivan was under a prison term for both state and federal. He was serving a concurrent sentence, was he? Serving concurrent sentences? He was, yes, your honor. And the Sullivan record does not indicate exactly which, whether it be the state or the federal, sentence expired first or second. We're just not clear or whether or not they were completely concurrent through their whole term. We just don't know that from the Getting back to Mr. Miller's case and the dates of which are concerning. Mr. Miller was first indicted. Where was he sentenced for the federal offense? Mr. Miller was sentenced down in Salt Lake by Judge Benson, I believe. And he was given a three-year sentence, wasn't he? He was given a 30-month sentence, I believe, your honor, and three years of supervision. Okay, so at the point that he was moved to the state facility, he was under a federal sentence. There's no doubt about that, is there? Yes, your honor. There's no doubt about that. So how did that federal sentence suddenly disappear by being moved into a state facility to serve the balance? It did not disappear, your honor. This issue hinges on the difference between imprisonment and custody. And that's where I guess the confusion lies in this issue. Because you look at the statutes involved here. You have two different statutes, one being 18 U.S.C. 3621. And that is basically guiding the commitment to prison. A person sentenced to a term of imprisonment shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed. Then you look down place of imprisonment. Bureau of Prisons may designate any available penal or correctional facility that is appropriate and suitable. So when Mr. Miller was transferred from FCI Florence, the federal prison in Colorado, up to the Bannock County Work Release Center, where he was able to go out, get himself acclimated, and attend treatment and I guess some basic schooling, I believe. He was serving both his supervision, because he was on supervision at that point by probation, and also he was getting credit for custody under the Bureau of Prisons. He was getting both. He was under both of their thumbs. Both probation and Bureau of Prisons. And that's where Sullivan is clearly applicable here. And what does the statute say about when supervised release begins? Supervised release begins, Your Honor. And this is under 18 U.S.C. 3624E. And it states, the term of supervised release commences on the day the person is released from imprisonment, meaning no longer incarcerated. So now we have an individual who is not imprisoned. He's still in custody, but he's not imprisoned. That's a distinction that I think is invisible. You've thought it up. It's ingenious, but it's invisible. Your Honor, again, just looking to the wording of the statutes itself, and Judge Windmill and a few other judges, I believe, in California have missed this, albeit subtle distinction, but incredibly important distinction. That being the difference between custody and imprisonment. Didn't he sign a statement saying he was a federal prisoner, incarcerated, when he entered the state facility? That's in the record. Honestly, Your Honor, I don't know, and I can't answer that. I believe that that's right in the record. It could be. I don't remember that, but it could be. So he thought he was incarcerated. He was in custody. He didn't know the subtle distinction. No, and that's why Mr. Miller has me, Your Honor, to point out those subtleties. But again, and all joking aside, it is subtle, but very important. Because just like the Sullivan court indicated, if you are on pre-release, that means that your clock starts with supervision. Just like Mr. Sullivan, Mr. Miller was on this community confinement setting, and his clock should have started ticking on June 22nd, therefore ending three years later on June 21st. What position of your presence has the authority to shorten the federal prison sentence? Not shorten, Your Honor. He is still receiving credit for custody. Under the statute, commitment to custody of BOP, a person who has been sentenced to a term of imprisonment shall be committed to the custody of the BOP until the expiration. The term of imprisonment is 30 months, is it not? It was. And there's no power of the BOP to shorten that? No, there is not. But the BOP is being imprisoned. But there is the power of the BOP, and I'm looking under subsection B of 18 U.S.C. 3621, BOP may designate any available penal or correctional facility that is appropriate and suitable. And this includes community confinement situations, work release. But he's still under the custody of BOP? Yes. Yes, Your Honor. They do that because the federal government doesn't have prisons, you know, in a lot of places. And a lot of places where there are federal prisons are overcrowding. And so, you know, a lot of federal prisoners are held in state custody. But they're in state institutions, but they're still in federal custody and federal government pays for it. And this court in Sullivan echoed some of that, you know, because of the importance to get inmates back into society, train them, house them, and reintroduce them. So hopefully there's no return. And that, I guess, concern is shared with supervision as well. And I guess that's kind of where we're at, where the Bureau of Prisons has an interest to acclimate these individuals. And probation has an interest to keep these individuals on the straight and narrow. And so I see it as a twofold where there is overlap, and it's a good overlap. Well, we don't have probation anymore, do we? We just have parole. Supervision, supervised release. Yeah, but we don't have probation. We just, we call it parole, right? We call it supervised release. United States probation oversees that supervision. And that supervision, in this case, was for a 36-month term that, under our position, had already expired when the petition was filed. All right. Thank you, Honor. Thank you. May it please the Court, I am Michelle Mallard from the District of Idaho, representing the United States. In this case, the 3624C and BOP custody really are the crucial distinctions between the U.S. v. Sullivan case and the case at Barr. 3624C was never mentioned in Sullivan, and BOP custody was only mentioned once. 3624C, of course, mandates that the Bureau of Prisons place an inmate for a period not exceeding six months in conditions that allow him to reintroduce himself to society in these, and they place them in these reentry programs. And the Bureau of Prisons complied perfectly with that statute when they placed Mr. Miller in the Bannock County jail work release program. On June 22nd of 2004, he was a BOP prisoner there under their control. In the record, I think on page 56, it does have a letter there indicating Mr. Richard Miller signed a letter saying, I am a federal prisoner. I'm under the custody, subject to the rules and regulations of the Bureau of Prisons and the Bannock County jail. Excuse me, that's page 58 of the record. I, Richard Miller, a federal offender. And then it refers to the Federal Bureau of Prisons twice more in that document. His transfer of jurisdiction order states that his term of supervised release was December 18th, 2004 to December 17th of 2007, and Mr. Miller was released from the Bannock County jail on December 18th of 2004, just as the order contemplated. And as Judge Windmill noted in his decision below in the district court, context provides important distinctions, and that's exactly what we have here. And Sullivan and Miller are completely different contexts. They're different contexts, but there sure is a lot of language in Sullivan that's problematical. For instance, both federal law and Montana state law indicate that time in community treatment centers like Montana's pre-release center is not imprisonment. And imprisonment itself is quoted and interquoted. Sullivan is ambiguous in many ways. It does, I think, clearly exclude any consideration of BOP custody when it cites Reno versus And in that decision, the Supreme Court, or excuse me, the Ninth Circuit in Sullivan said the Supreme Court has held that detention at a community treatment center where the defendant is not subject to the control of the Bureau of Prisons, is not imprisonment, and therefore cannot be credited against a defendant's prison sentence. So in that instance, they specifically noted the distinction between BOP custody and a lack of BOP custody. And unlike Sullivan, Mr. Miller was solely under a federal sentence and solely under federal custody. And BOP custody is a point that's emphasized in both Reno v. Corre, and so I think the name of the case is In the Sullivan case, wasn't Sullivan still under federal custody? It is very unclear under the facts, but I think a reasonable inference from the facts in the case is that he was not under federal custody at the time. That was not ever mentioned in the Sullivan case, that he was under BOP custody, and the facts in the case cited certainly seem to infer that he was under a state sentence and state custody. Frankly, it looks like the Bureau of Prisons and probation lost track of Mr. Sullivan when he was released from his federal sentence to continue serving his state sentence as it were concurrent. What we're being asked to do is say, well, for purposes of federal law, when a state prisoner is given a three-year sentence, and after serving two and a half years, he's released to a community treatment center. Under federal law, that is not imprisonment, that lasts six months. If it's a state sentence. And when a federal prisoner is given a three-year sentence, and with six months to go, he's released to the same community treatment center, it's still imprisonment. And, you know, I mean, well, I guess we can have any rules we want, but sometimes, you know, there's sort of a yearning for logic in treating two perfectly similar situations similarly. Well, there's two answers to that. The first one is that the Supreme Court in Reno v. Corre noted that defendants, two defendants in the same facility undergoing the same program could be, one could be considered detained and one could be considered released. They did not consider the type of facility or the purpose of the facility. I'm sorry for that kind of input. Detained is one of those wonderful words that is bandied about the system. Yes, I would hate to have to trace. You would not want to be detained, no or no? No, no. The second answer to that is that if a prisoner is serving a state sentence, 3624C does not come into play. That is a statute that comes into play for federal prisoners. It's a federal law. It's not a state law. So while it does seem somewhat illogical to treat someone under a state sentence and someone under a federal sentence differently under the same circumstances, that's supported by the statute, 3624C. And the language in C is that you're particularly referring to is what? It says the Bureau of Prisons shall to the extent practicable assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 percent of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's reentry into the community. It's the last part of the term, I suppose, is what you're emphasizing in there. Yes. And as Judge Windmill pointed out, the last 10 percent of the term refers to the term of imprisonment. And as this Court has noted previously, six months of the sentence essentially disappears if you apply Sullivan's holding to the facts of Miller's case in a case where it's simply a federal sentence that's being served. You cannot – It doesn't really disappear. I mean, you can – you're pointing – that's not a bad idea. I mean, you could say, okay, in the last six months, he's released to a work release program. It's a state facility and everything. We get him to sign something so if he escapes, it's still escape from custody and can be punished as an escape. But it doesn't have to count necessarily as imprisonment, I suppose, for purposes of supervised release. For purposes of imprisonment or supervised release? For purposes of starting up a supervised release term. That's the only thing that's really crucial here is when the term starts. Right. If the term starts when Mr. Miller enters into the Bannock County jail work release program, then there's no possible way for the sentence imposed by the judge in Utah to be fulfilled. It's either a 24-month sentence with a three-year term of supervised release or a 30-month sentence with a two-and-a-half-year term of supervised release under Sullivan and the defense's argument. So if BOP complies with the mandate to put a prisoner into a reentry program and that's counted as supervised release, then the term of imprisonment could never be fulfilled, whether it's a 30-month term or a 64-month term. One of the two terms can't be issued. Right. You can't fulfill both of them. And the three lower court decisions, three district courts have published decisions on this, too, I think, in California, in addition to Judge Windmills, have all noted this conundrum that you just can't fulfill the term of imprisonment if you follow Sullivan and ignore 3624C. But Sullivan can be reconciled to the government's argument by limiting it to the facts of that case where a state prisoner is released to a state pre-release center. Really, you know, the Court had a difficult job in trying to determine when supervised release began. They didn't have much of a record, and it appears that he had been – that he was completely finished with his BOP sentence and released to state custody. So we don't know that he was completely through with his BOP sentence, Sullivan, do we? We don't know that for sure. You're right, Your Honor. The facts there, I think a reasonable inference is that he was finished with BOP custody. There is no reference that he was in BOP. The only reasonable inference you pointed out is they just forgot about this guy, and he dropped through the cracks. I think BOP released him, and probation didn't pick him up, and he went on to serve his state sentence. That's speculation on my part. Well, okay. Thank you. Thanks. If the Court has no further questions? No. Thank you. Thank you. Your Honor, do I have any time reserved? Yeah, 38 seconds. I'll be brief. Regarding the Supreme Court's holding in Reno v. Correa, the issue here becomes the  therefore is not imprisonment, and therefore cannot be credited. The issue becomes the defendant is not subject to the control of the Bureau of Prisons. In our case, Mr. Miller was subject to the control of the Bureau of Prisons. If he left work release, he could have been prosecuted for escape. And that is the distinction here. And regarding the issue of, I don't know if we want to refer to it as double counting or some sort of overlap, the statute does allow for that. Sullivan specifically states that we can have, or supervised release does commence when an individual goes on to these community correction... Sullivan kind of ruminates about that a little bit, and then says, well, we don't really have to say it because we've decided it's not imprisonment. They talk about it a little bit. They do, Your Honor. And, but again, the holding and the proposition that was born from Sullivan simply is that a community pre-release center is not imprisonment, is not prison. So then we go to the statute regarding how Bureau of Prisons counts these things. And the Bureau of Prisons is given wide latitude on where they place individuals for custody. They can put them in prison or they can house them other places. And that is our point here. Okay. Thank you. Thanks. Thank you very much. Matter is submitted.
judges: Pregerson, Canby, Noonan